R. Alan HANESWORTH and William M. Wilson a/k/a W.M. Wilson, Appellants (Plaintiffs),

v.

Donna JOHNKE, Personal Representative of the Estate of Georgia Kate Sturgeon a/k/a Georgia Kate Collins, and Donna Johnke, Elmer Johnke, Steven Stumbough and Marjorie Stumbough, as individual heirs of the Estate of Georgia Kate Sturgeon a/k/a Georgia Kate Collins, and recipients of the proceeds thereof The Estate of Georgia Kate Sturgeon, Appellees (Defendants).

No. 89–48.

Supreme Court of Wyoming.

Nov. 28, 1989.

Franklin D. Bayless and Richard C. Slater, Cheyenne, for appellants.

Raymond B. Hunkins of Jones, Jones, Vines & Hunkins, Wheatland, for appellees.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

MACY, Justice.

This is an appeal from a judgment on the pleadings in favor of Appellees Donna Johnke (the personal representative and an individual heir of the estate of Georgia Kate Sturgeon) and Elmer Johnke (an indi-

vidual heir of the estate of Georgia Kate Sturgeon). Appellants R. Alan Hanesworth and William M. Wilson filed suit against Appellees to recover amounts due on a promissory note executed by the decedent, Georgia Kate Sturgeon. Appellants alleged that Appellees failed to provide Appellants with actual notice of Sturgeon's death and of Appellants' right to file a claim against the estate. The court ruled that, although Appellants were constitutionally entitled to receive actual notice to timely file their claims against the estate, they were not entitled to relief as the United States Supreme Court case of *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), did not apply to cases which were final before it was decided.

We affirm.

Appellants raise the following issues:

1. Whether Wyoming Statute Sections 2–7–201 to 2–7–703, 2–7–718 authorizing publication notice to creditors are constitutionally infirm under the due process clause (14th Amendment) of the United States Constitution and Article 1 of the Constitution of the State of Wyoming, because they bar claims against the estate of a decedent (of known or reasonably ascertained estate creditors) without requiring actual notice of the statutory prescribed time and place for filing claims.

2. Whether Appellants above-named were deprived of the due process of law by reason of failure of the Administratrix of the estate to provide them with actual notice of the time and place for filing of claims in the estate or the time and place for filing suit on rejected claims.

3. Whether the District Court erred in granting Appellees' Motion for Judgment on the Pleadings because the Appellants['] claims are barred by the doctrine of res judicata.

Sturgeon died testate on October 7, 1986. Her will was admitted to probate on October 23, 1986. On October 31, November 7, and November 14, 1986, the notice of the probate of her will and notice to creditors was published pursuant to Wyo.Stat. § 2–7–201 (1977).[1] Appellants failed to file a claim within the three-month period provided in the notice. On March 3, 1988, the court discharged the personal representative after determining that all the property inventoried and appraised in the estate had been distributed pursuant to the orders of the court entered on September 29 and November 30, 1987.

On October 20, 1988, Appellants filed their complaint against Appellees to recover the balance of the principal and accrued interest owing on a promissory note executed by Sturgeon. Sturgeon failed to make annual payments on the promissory note which she had executed and delivered to Appellants on December 15, 1983. The complaint alleged, *inter alia*, that Appellants were known creditors; that they were entitled to, but did not, receive actual notice of the time and place to timely file their claim; and that, as a result, they were deprived of their due process and equal protection rights under the Wyoming and United States Constitutions. Appellees answered the complaint, admitting that actual service of the notice was not given to Appellees and denying that they had a duty to seek out creditors and solicit the filing of claims against the estate.

**1.** Section 2–7–201 provides in pertinent part:
Upon admission of a will or an estate of an intestate decedent to probate and issuance of letters, the personal representative shall cause to be published once a week for three (3) consecutive weeks in a daily or weekly newspaper of general circulation in the county in which the probate is pending, a notice of admission of the will or estate to probate and of the appointment of the personal representative. The notice shall state that any action to set aside the probate of the will shall be

brought within three (3) months from the date of the first publication of the notice or thereafter be barred. The publication shall include a notice to debtors to make payment and to creditors having claims against the decedent to file them with the necessary vouchers in the office of the clerk of court from which the letters were issued within three (3) months from the date of the first publication of the notice, or thereafter be forever barred.

On November 22, 1988, Appellees moved for judgment on the pleadings. They contended in their memorandum in support of the motion that Wyoming's probate code did not require or contemplate that the notice provided in § 2–7–201 be served on creditors [2] and that the timely filing of a claim in accordance with mandatory statutory requirements is a prerequisite for an action on that claim. Appellants' memorandum in opposition to Appellees' motion for judgment on the pleadings relied upon *Tulsa Professional Collection Services, Inc.*, 108 S.Ct. 1340. That decision held that, under Oklahoma's nonclaim probate statute, the due process clause of the fourteenth amendment to the United States Constitution required " '[n]otice by mail or other means as certain to ensure actual notice' " to be given to known or reasonably ascertainable creditors. *Id.* at 1348 (quoting *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983)).

On January 19, 1989, the district court entered its order granting Appellees' motion for judgment on the pleadings and dismissing Appellants' action with prejudice. The court explained in its decision letter that, although § 2–7–201 suffered the same constitutional infirmity as the Oklahoma statute, the controlling case of *Tulsa Professional Collection Services, Inc.* did not have retroactive application to a probate proceeding which became final before the decision was announced. It is from the district court's order that this appeal is taken.

The Supreme Court, in *Tulsa Professional Collection Services, Inc.*, 108 S.Ct. 1340, began its analysis by explaining the notice requirements of the due process clause of the fourteenth amendment:

> *Mullane v. Central Hanover Bank & Trust Co.*, [339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)], established that state action affecting property must generally be accompanied by notification of that action: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Id.* at 1344. The Supreme Court stated that the type of notice required depends upon the balance of the interests of the state and the individual interests protected by the fourteenth amendment. The Supreme Court further explained:

> "[A]ctual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable."

*Id.* (quoting *Mennonite Board of Missions*, 462 U.S. at 800, 103 S.Ct. at 2712 (emphasis in original)).

The *Tulsa Professional Collection Services, Inc.* majority determined that the appellant's unsecured claim against the estate was a cause of action and a property interest under the fourteenth amendment. The Supreme Court also held that Oklahoma's statute implicated sufficient state action to invoke the due process clause of the fourteenth amendment. The Supreme Court based that conclusion on the following statutory characteristics: (1) the nonclaim statute became operative after probate proceedings had been commenced in state court; (2) the time bar could be triggered only after a court had appointed an executor or executrix; (3) the statute directed the executor or executrix to publish notice immediately after court appointment; and (4) the statute required the executor or executrix to file copies of the notice and an affidavit of publication with the court. The Supreme Court stated that such substantial involvement of the probate court in the probate procedure constituted state action.

---

**2.** At the time this action arose, Wyo.Stat. § 2–7–205(a) (1977) provided:

The notice required in W.S. 2–7–201 shall, immediately upon the filing thereof, be mailed to the surviving spouse, if any, and to all of the heirs and beneficiaries named in the will of the decedent.

This statute was amended in 1989.

Next, the Supreme Court balanced the state's legitimate interest in expeditious resolution of probate proceedings and the creditors' interest in protection of their claims. The Supreme Court determined that providing actual notice to known or reasonably ascertainable creditors was not inconsistent with the goals of the statute and was not unreasonably cumbersome.

■ The statutory procedure in Wyoming is quite similar to Oklahoma's scheme in that the time bar provided in § 2–7–201 is triggered only after probate proceedings have been commenced in district court, a personal representative has been appointed by the district court, and notice has been given to creditors to file their claims against the estate with the clerk of court. In addition, proof of publication and mailing or delivery of the notice is required to be filed with the clerk of court. We hold that the involvement of the district court in the probate proceedings is so pervasive and substantial that it must be considered such state action as to invoke the due process clause of the United States and Wyoming Constitutions.[3]

■ We agree with Appellants, as did the district court, that the *Tulsa Profes-*

*sional Collection Services, Inc.* case is controlling and that § 2–7–201 suffered the same constitutional infirmities as the Oklahoma statute did in that it did not require actual notice to be given to known or reasonably ascertainable creditors with claims against a decedent's estate.[4]

■ The pivotal issue we must decide is whether the *Tulsa Professional Collection Services, Inc.* decision applies retroactively to probate proceedings finalized before that decision was announced. Because our determination focuses on the application of a United States Supreme Court decision, we rely upon United States Supreme Court cases which have addressed the issue of retroactive and prospective application of judicial decisions.[5] *See Carter v. City of Chattanooga, Tennessee,* 850 F.2d 1119 (6th Cir.1988), *cert. denied* — U.S. —, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989); and *Gross v. Harris,* 664 F.2d 667 (8th Cir. 1981).

The principal civil case which dealt with the retroactive-prospective issue is *Chevron Oil Company v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).[6] In that case, the Supreme Court articulated

**3.** *See* Recent Developments, *Constitutional Law—Fourteenth Amendment Right to Due Process—Notice to Estate Creditors Under State Non-claim Statutes,* 56 Tenn.L.Rev. 465 (1989), for an in-depth discussion of state action in relation to nonclaim probate statutes.

**4.** The constitutional infirmity of § 2–7–201 was corrected by the Wyoming legislature when it amended § 2–7–205(a) to provide in pertinent part:

> A true copy of the notice required in W.S. 2–7–201 shall be mailed by ordinary United States mail, first class, to:
>
> \*   \*   \*   \*   \*   \*
>
> (ii) Each creditor of the decedent whose identity is reasonably ascertainable by the personal representative within the time limited in the notice to creditors. The mailing shall be made not later than thirty (30) days prior to the expiration of three (3) months after the first publication of the notice in the newspaper.

This amendment was effective February 24, 1989.

**5.** We note that this Court has also addressed the issue of whether a decision should be applied

retroactively or prospectively. *See Adkins v. Sky Blue, Inc.,* 701 P.2d 549 (Wyo.1985); and *Witzenburger v. State ex rel. Wyoming Community Development Authority,* 577 P.2d 1386 (Wyo.1978). In *Ostwald v. State,* 538 P.2d 1298, 1303 (Wyo.1975), *quoted with approval in Adkins,* 701 P.2d at 551–52, this Court stated:

> [A] ruling may be prospective only and it may apply to the **invalidity of statutes** as well as to the effect of a decision overturning long-established common law rules; the constitution neither prohibits nor requires retrospective effect and the federal Constitution has no voice upon the subject; and, the accepted rule today is that in appropriate cases in the interests of justice, a court may make its decision prospective.

(Emphasis in original and footnote omitted.)

**6.** In *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Supreme Court stated that, when a court addresses the retroactive-prospective issue, no distinction exists between criminal and civil cases. In a recent case, however, the Supreme Court said that the area of civil retroactivity is governed by the principles set out in *Chevron Oil Company. Griffith v. Kentucky,* 479 U.S. 314, 322 n. 8, 107 S.Ct. 708, 713 n. 8, 93 L.Ed.2d 649 (1987).

the following standards for prospective application of a decision:

> **First,** the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. **Second,** it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker,* [381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965)]. **Finally,** we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Cipriano v. City of Houma,* [395 U.S. 701, 706, 89 S.Ct. 1897, 1900, 23 L.Ed.2d 647 (1969)].

*Chevron Oil Company,* 404 U.S. at 106–07, 92 S.Ct. at 355–56, (emphasis added and some citations omitted).

Applying these standards, we must initially determine whether the *Tulsa Professional Collection Services, Inc.* decision established a new principle of law. In *Griffith v. Kentucky,* 479 U.S. 314, 325, 107 S.Ct. 708, 714, 93 L.Ed.2d 649 (1987) (relying upon *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982)), the Supreme Court described this query as the **clear break** exception which is used to apply a decision prospectively "if the new rule explicitly overruled a past precedent of this Court, or disapproved a practice this Court had arguably sanctioned in prior cases, or overturned a long-standing practice that lower courts had uniformly approved." In *Tulsa Professional Collection Services, Inc.,* the United States Supreme Court addressed a question of first impression. In addition, the Supreme Court acknowledged that it rejected a practice widely adopted by state legislatures and courts when it stated, "Such 'nonclaim statutes' are almost universally included in state probate codes." *Tulsa Professional Collection Services, Inc.,* 108 S.Ct. at 1342 (citing Falender, *Notice to Creditors in Estate Proceedings: What Process Is Due?,* 63 N.C. L. Rev. 659, 667–68 (1985)).

To satisfy the second prong of the *Chevron Oil Company* test, we must determine if the purposes of the *Tulsa Professional Collection Services, Inc.* rule would be furthered by retroactive application. *Chevron Oil Company,* 404 U.S. 97, 92 S.Ct. 349; *Adkins v. Sky Blue, Inc.,* 701 P.2d 549 (Wyo.1985). The purpose of the actual notice requirement is to satisfy the due process requisite stated in *Tulsa Professional Collection Services, Inc.* and established in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). While that purpose may be furthered by retroactive application of the *Tulsa Professional Collection Services, Inc.* decision, we conclude that the benefit of avoiding hardships created by retroactivity is an ample basis for nonretroactive application.

The third prong of the *Chevron Oil Company* test is an examination of the hardship or injustice generated by retroactivity. *Chevron Oil Company,* 404 U.S. 97, 92 S.Ct. 349. In this case, retroactive application of the *Tulsa Professional Collection Services, Inc.* decision could cause the disturbance of many property rights. Those rights were defined according to law unexpectedly declared invalid, and they have created immeasurable reliance. As the United States Supreme Court stated, "The actual existence of a statute, prior to [it being declared invalid], is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration." *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 374, 60 S.Ct. 317, 318, 84 L.Ed. 329 (1940).

We hold that the *Tulsa Professional Collection Services, Inc.* decision does not apply retroactively to probate proceedings rendered final before it was decided on April 19, 1988. We have previously stated that a probate proceeding becomes final

when the court issues the decree of distribution. *Taylor v. Estate of Taylor*, 719 P.2d 234 (Wyo.1986); *Stevenson v. Hall*, 473 P.2d 581 (Wyo.1970). In this case, the district court issued the final decree of distribution on November 30, 1987. Thus, Appellants' claim is barred because they failed to file it within the time limits prescribed by § 2–7–201. *See Naughton v. Estate of Baker*, 483 P.2d 513 (Wyo.1971); *Lo Sasso v. Braun*, 386 P.2d 630 (Wyo. 1963); and *Estate of Peterson v. Deimer*, 75 Wyo. 416, 296 P.2d 504 (1956).

Affirmed.